UNITED STATES of America

v.

RICHLYN LABORATORIES, INC., et al.

Civ. A. No. 36583.

United States District Court,
E. D. Pennsylvania.

Oct. 31, 1973.

Robert E. J. Curran, U. S. Atty., Frank Bove, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Franklin Poul, Walt Block Schory & Salis Cohen, Leonard L. Ettinger, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

EDWARD R. BECKER, District Judge.

This case has been closed for some two-and-a-half years. Presently before us is the government's motion under rule 60(b),[1] F.R.Civ.P., to vacate this Court's dismissal order of February 18, 1971, and to reopen the case and reinstate a preliminary injunction that was in force for over six years prior to the dismissal. The case arises under the Food, Drug, and Cosmetic Act[2] and was initiated by the government's complaint for preliminary injunction filed September 30, 1964, which alleged certain inadequacies in the manufacture and processing of drugs at defendants' plant. The preliminary injunction was entered by consent on October 9, 1967.[3] For several years the parties attempted to resolve their differences without a trial, but at no time did the government move to obtain a permanent injunction. On December 30, 1970, shortly after this case was reassigned to the undersigned, it was listed for a status call on January 7, 1971. Counsel were notified by mail and by publication in The Legal Intelligencer. Defense counsel responded with a letter dated December 31, 1970, stating:

> To the best of my knowledge there is nothing further to be done in this matter. It has been entirely disposed of and I do not understand why it was listed.

The government did not appear for the status call, nor did it return the status call questionnaire. We viewed the government's silence as acquiescence in the defense position, and believed the case to have been settled. In an effort to clear the case from the docket, we entered an order on February 18, 1971, dismissing the case with prejudice under local rule 23(b).[4] Copies of the order were sent by the clerk's office to all parties.

---

1. Rule 60(b) reads in pertinent part:

(b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. . . .

2. 21 U.S.C. § 301 et seq.

3. The injunction prohibited the introduction into interstate commerce of any drug that was adulterated within the various meanings of 21 U.S.C. § 351 and required adherence to certain specified standards of acceptable manufacturing and processing techniques.

4. Rule 23(b) provides:

Whenever in any civil action counsel shall notify the Clerk or the judge to whom the action is assigned that the issues between the parties have been settled, the Clerk shall, upon order of the judge to whom the case is assigned, enter an order dismissing the action with prejudice, without costs, pursuant to the agreement of counsel. Any such order of dismissal may be vacated, modified, or strick-

On November 2, 1972, the present motion was filed. In support of the motion, the government urges that it was unaware of the status call, of the defendant's letter indicating the case was settled, and of the dismissal, until March 1972, when the Food and Drug Administration (FDA) "discovered" the dismissal and recommended to the United States Attorney in Philadelphia that he move to reinstate the injunction. Appended to the government's brief are affidavits indicating that recent inspections of the defendant's plant have uncovered literally scores of deviations from the FDA's "Current Good Manufacturing Practices," which are published in the Code of Federal Regulations.

The government asks us to draw upon our reservoir of equitable power, codified in rule 60(b)(6), to grant relief, where justice so requires, from the operation of a judgment. For the reasons that follow, we decline the invitation to exercise that power and deny the government's motion. Because the parties exhaustively briefed all issues raised by the motion, we will give only a succinct discussion of the several reasons for our decision, rather than review all the arguments expounded in the briefs.

■ The government's delay in moving for finalization of the injunction resulted in the lawsuit's becoming stale long, long ago. The drugs and specific violations forming the basis of the complaint are no longer involved in the affidavits submitted to us, which relate to more recent violations. The government's current contempt petition is based on three shipments of Rauwolfia Serpentina in May and June of 1970 and one shipment of Estrand-Gens in January of 1971. These matters were not involved when the action was filed in 1964; indeed, neither of these drugs was involved in the original complaint, which referred to many other drugs. Thus, the facts alleged in the 1964 complaint and forming the basis for the consent injunction bear no relation to the facts existing eight years later when the motion to reinstate the injunction was filed. This state of affairs supports our conclusion that any further action by the government against the defendants can most appropriately be pursued in the context of a fresh lawsuit. In addition, we have serious reservations about the propriety and even the constitutionality of permitting the continuation for so long of a preliminary injunction so broad that it might give rise to strict liability, i. e., liability without scienter, in criminal contempt.

The government's delay of twenty months in moving to reopen the case after entry of a 23(b) order also militates against reopening. Surely one touchstone of our judicial system is the principle of the finality of its judgments. Local Rule 23(b) allows ninety days for the filing of a motion to reopen a dismissed case. We find from the clerk's notation on the dismissed order that a copy of the order was sent to the United States Attorney's office. Furthermore, the government delayed its motion eight months after it became aware of the dismissal and long after March 1972, when we advised a representative of the FDA, who stopped by our chambers to inquire, that the proper way to reopen the case was to file a motion.

■ The government's failure to comply with our status call order would of itself justify dismissal, even if we had not believed the case settled.[5] We find that the United States Attorney's office

en from the record, for cause shown, upon the application of any party filed within ninety (90) days of the entry of such order of dismissal.
The rule 23(b) dismissal was inappropriate, since a case with an outstanding injunction cannot technically be considered settled; rather, the docket should have been cleared by an order under Administrative Office form JS6 or, perhaps still more appropriately, by proceedings on a motion to dissolve the injunction. We regret our inattentiveness to that detail.

5. Rule 16, F.R.Civ.P., empowers district courts to call in the parties for pretrial

did receive our three-page status call list. Furthermore, notice appeared in The Legal Intelligencer.[6] Thus, although the dismissal under rule 23(b) was technically inappropriate (see n. 4, *supra*), under the circumstances, equity requires that it be allowed to stand. Indeed, the Court's power to dismiss a case in the circumstances presented here flows from several additional sources.

■ *First,* we have inherent power to dismiss a case on our own motion for want of prosecution. *See* Torino v. Texaco, Inc., 378 F.2d 268 (3d Cir. 1967). *Second,* rule 41(a) authorizes dismissal on the defendant's motion for failure to prosecute or to comply with any order of court. *Third,* local rule 23(a) allows dismissal of an action in which no papers are docketed for two years—in this case, only the dismissal order interrupted a period of over two years without a docket entry. Want of prosecution is particularly burdensome to a defendant who remains under the force of a preliminary injunction.

■ Furthermore, the suitability of rule 60(b) relief in this case is questionable. A maximum of one year is allowed for a motion based on rule 60(b)(1): "mistake, inadvertence, surprise, or excusable neglect." And 60(b)(6), "any other reason justifying relief," under which the motion must be brought "within a reasonable time," may not be used as a catchall to avoid the one-year limitation where 60(b)(1) applies. Gambocz v. Ellmyer, 438 F.2d 915 (3d Cir. 1971). Nor do we feel that the motion here was made within a reasonable time after discovery of the dismissal. As noted above, the government still delayed over seven months after we advised an FDA representative to file a motion. *See* 7 J. Moore, Federal Practice ¶60.27[3], suggesting that a motion based on lack of notice of a judgment should reasonably be filed after discovery of the judgment within the time normally allowed for appeal, "since a litigant who excuses failure to act on want of notice must act at least within the period he would have had if he had received the notice." The time for appeal is sixty days, *see* F.R.App.P. 4(a). That rule also allows only a thirty-day extension of the time for taking an appeal upon a showing of excusable neglect based on a failure of a party to learn of the judgment.

■ Finally, and most importantly, it is patently obvious that no prejudice whatever will be suffered by the government as a result of our refusal to reopen the case. We fail to see the logic in the government's desire to exhume a stale injunction whose issuance resulted from facts that have long since changed. Indeed, even were we to reinstate the injunction, we would have doubts concerning the constitutionality of using contempt sanctions for unintentional failure to comply with a decree so broad as simply to recite a statutory standard. Recognizing that the dismissal could not possibly prejudice the government's right to proceed against more recent violations of law, the defendants have offered to agree to the modification of the dismissal to make it specifically "without prejudice." We will modify the order accordingly.

Our disposition of this motion should in no way indicate a lack of concern by the Court for the grave problem of mislabeled, adulterated, or improperly manufactured drugs. In the case before us, however, reinstatement of an injunction tracking the language of a statute would protect the public no better than the statute itself, implemented by the omnipresent FDA inspectors at the defendant's plant and the administrative powers afforded the FDA under the statute.

---

conferences to simplify and narrow the issues in the case and for "such other matters as may aid in the disposition of the action." Local rule 7 specifically countenances the scheduling of status calls.

6. *Cf.* Standing Order Relating to Calendar Control, Eastern District of Pennsylvania, adopted January 1, 1970, ¶ 2, providing for notice of trial lists by publication in The Legal Intelligencer.

The government is (and has long been) free to file a fresh complaint immediately, if it wishes, based upon the extensive evidence indicated by the affidavits and inspection reports submitted to us. These materials suggest serious violations of law at the defendant's plant, but in matters wholly unrelated to the subject of the 1964 complaint in the instant action.

The motion to reopen the case will be denied.