**Bill J. GAMBOCZ, Appellant,**

v.

**Anthony M. YELENCSICS et al.**

**No. 71–1785.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Sept. 7, 1972.

Decided Oct. 12, 1972.

J. Alan Gumbs, Perth Amboy, N. J., for appellant.

Frank J. Miele, Riker, Danzig, Scherer & Brown, Newark, N. J., for appellee.

Before SEITZ, Chief Judge, and VAN DUSEN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT .

ALDISERT, Circuit Judge.

This appeal from an order of the district court dismissing a complaint brought under 42 U.S.C. §§ 1983 and 1985, and permanently enjoining appellant from instituting proceedings against appellees and those in privity with them, presents questions of *res judicata* and collateral estoppel.

On January 3, 1968, appellant brought suit against John Ellmyer, Lillian Apel, Louis La Plaga and Marie Keller, over an incident involving a $55.00 check.[1] On November 8, 1968, appellant requested that the suit be withdrawn. The district court granted the motion and dismissed with prejudice. Subsequently, on May 11, 1970, appellant moved to reopen the judgment. The motion was denied and we affirmed. Gambocz v. Ellmyer, 438 F.2d 915 (3d Cir.), cert. denied, 403 U.S. 919, 91 S.Ct. 2232, 29 L.Ed.2d 697 (1971), reh. denied, 404 U.S. 875, 92 S.Ct. 30, 30 L.Ed.2d 121 (1972). Two and one half weeks after affirmance of the denial of his motion to reopen, but before denial of his petition for rehearing en banc and·denial of his petition for a writ of certiorari, appellant filed the complaint in the present case. Certain irrelevant changes of a de minimis nature were made in this complaint as compared to his previous complaint. Anthony Yelencsics, Joseph Ferenczi, and the Township of Edison, New Jersey, were added as defendants. However, the operative facts of the two suits are identical.[2]

1. Gambocz is an insurance broker or agent; Apel is court clerk for Edison Municipal Court; Ellmyer and La Plaga are police officers. Gambocz had given Keller a check which was returned for insufficient funds. Thereafter Keller signed a criminal complaint against Gambocz alleging the worthless check. Yelencsics was Gambocz's political opponent in a mayoralty contest in Edison, New Jersey. Ferenczi was his campaign manager. The gravamen of Gambocz's complaint is that all the defendants conspired against him to bring the worthless check charge for the purpose of harming him "in his standing in the community, in business relations, [and] opportunity to run for political office." An action for abuse of process, brought in the state court system, was resolved in defendants' favor. Gambocz v. Apel, 102 N.J.Super. 123, 245 A.2d 507 (App.Div.1968), 52 N.J. 485, 246 A. 2d 447 (1968). A· more detailed statement of the facts may be found in Gambocz v. Ellmyer, 438 F.2d 915 (3d Cir.), cert. denied, 403 U.S. 919, 91 S.Ct. 2232, 29 L.Ed.2d 697 (1971), reh. denied, 404·U.S. 875, 92 S.Ct. 30, 30 L.Ed.2d 121 (1972).

2. The essential allegations of the second complaint may be compared with those of the first complaint which was dismissed with prejudice:

*Second Complaint*

9. On or about the 30th day of August, 1965, the Defendant, Louis La Plaga did meet and confer with the Defendant, Marie Keller, who was a private citizen and widow of one Leroy Keller, the latter being a deceased close friend of the Plaintiff and holder of an unpaid $55.00 check written in *May of 1964 for a past consideration.*

10. As a result of said meeting, the Defendants, Anthony M. Yelencsics, John W. Ellmyer, Jr., and Louis La Plaga did meet and confer, and on or about the 30th and 31st days of August, 1965, did unlawfully conspire for the purpose of injuring Plaintiff . . ., to cause criminal processes and incarceration for the mere owing of civil debts, to utilize the powers of the State of New Jersey to deny political freedom of Plaintiff to run for office and citizens of Edison to have a *bona fide* general election, and to deny Plaintiff in criminal matters due process of law and equal protection. . . .

Dismissal with prejudice constitutes an adjudication of the merits as fully and completely as if the order had been entered after trial. Lawlor v. National Screen Service Corp., 349 U.S. 322, 327, 75 S.Ct. 865, 99 L.Ed.2d 1122 (1955). Therefore *res judicata* bars relitigation of the claims dismissed in the prior suit against the defendants John Ellmyer, Lillian Apel, Louis La Plaga and Marie Keller. Fiumara v. Sinclair Refining Co., 385 F.2d 395 (3d Cir. 1967).

As to the defendants Yelencsics, Ferenczi, and the township,[3] none of whom were parties to the first action, we must consider the application

11. Pursuant to said conspiracy, the said Defendants, Anthony M. Yelencsics, John W. Ellmyer, Jr. and Louis La Plaga did contrive to send Louis La Plaga to the home of the Defendant, Marie Keller, in order to induce her to come to police headquarters to file a criminal complaint, under color of law and state authority, and to cause criminal processes and incarceration to be undertaken for mere civil indebtedness and for no criminal action.

12. The said Defendants thereupon did contrive to get Defendant, Marie Keller, to join their illegal conspiracy by having her wrongfully undertake to utilize the criminal processess [sic] of the State of New Jersey as a way of extorting from the Plaintiff $55 which he alleged he did not owe, or alternatively, said Defendant, John W. Ellmyer, Jr. did falsely and fraudulently conceal from Defendant, Marie Keller, the criminal nature of proceedings.

13. On or about the 31st day of August, 1965, the Defendant, Marie Keller, did join and assist the Defendants, Anthony M. Yelencsics, John W. Ellmyer, Jr. and Louis La Plaga in the illegal conspiracy, following inducements of discussions of a part time job for the said Marie Keller, advice concerning law from John W. Ellmyer, Jr., and a conference arranged by the said Louis La Plaga and John W. Ellmyer, Jr., with R. Joseph Ferenczi, Esq., attorney and clerk for the said Defendant, Township of Edison and campaign manager of Plaintiff's opponent, the incumbent Democratic Mayor, the Defendant, Anthony M. Yelencsics, all of which was designed to induce and did effect an improper criminal process to be issued and prosecuted against Plaintiff.

#### First Complaint

9. As a result of said meeting, [August 30, 1965] the Defendants, Louis La Paga [sic] and John W. Ellmyer, Jr. did meet and confer, and on or about the 30th and 31st days of August did unlawfully conspire for the purpose of injuring Plaintiff to impede, hinder, obstruct and defeat the true course of justice, to deny Plaintiff equal protection of law, to injure Plaintiff. . . . incarceration for the mere owing of civil debts, to utilize the powers of the State of New Jersey to deny political freedom of Plaintiff to run for office and citizens of Edison to have a *bona fide* general election, and to deny Plaintiff in criminal matters due process of law and equal privilege and immunities. . . .

10. Pursuant to said conspiracy, the said Defendants, John W. Ellmyer, Jr. and Louis La Paga [sic] did contrive to send Louis La Paga [sic] to the home of the Defendant, Marie Keller, in order to induce her to come to police headquarters to file a criminal complaint, under color of law and state authority, and to cause criminal processes and incarceration to be undertaken for mere civil indebtedness and for no criminal action.

11. The said Defendants thereupon did contrive to get Defendant, Marie Keller, to join their illegal conspiracy by having her wrongfully undertake to utilize the criminal processes of the State of New Jersey as a way of extorting from the Plaintiff $55 which he alleged he did not owe, or alternatively, said Defendant, John W. Ellmyer, Jr. did falsely and fraudulently conceal from Defendant, Marie Keller, the criminal nature of proceedings.

12. On or about the 31st day of August, 1965, the Defendant, Marie Keller, did join in and assist the Defendants, Louis La Paga [sic] and John W. Ellmyer, Jr. in the illegal conspiracy, following inducements of discussions of a part time job for the said Marie Keller, advice concerning law from John W. Ellmyer, Jr., and a conference arranged by the said Louis La Plaga and John W. Ellmyer, Jr., with Joseph Ferenzi [sic], Esq., attorney and clerk for the said Township of Edison and campaign manager of Plaintiff's opponent, the incumbent Democratic Mayor, all of which was designed to induce and did effect an improper criminal process to be issued and prosecuted against Plaintiff.

3. A municipality is immune from suit under 42 U.S.C. § 1983. United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84 (3d Cir. 1969).

of the doctrine first enunciated by this court in Bruszewski v. United States, 181 F.2d 419 (3d Cir. 1950). There we held that *res judicata* may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants.[4] In construing *Bruszewski*, Judge Hastie, the author of that opinion, has stated, "It was our view in *Bruszewski* . . . that . . . a party who as plaintiff had asserted a claim and had lost should not be heard again on the merits of that claim even in a second suit which he thereafter has instituted against a stranger to the original claim." Nickerson v. Kutschera, 419 F. 2d 983, 985 (3d Cir. 1969) (Hastie, J., dissenting).[5]

In the application of the *Bruszewski* doctrine, however, it is important that we be governed by the principle of the law rather than by the nomenclature affixed to it. Thus, the doctrine is sometimes called "collateral estoppel," see Provident Tradesmens Bank & Trust Co. v. Lumbermens Mutual Casualty Co., 411 F.2d 88, 92 (3d Cir. 1969), because the plaintiff is indeed estopped from proceeding on the same cause of action against the new defendants. Use of the adjective "collateral" to characterize this form of estoppel grows out of the fact that the bar of the prior adjudication is not interposed directly, by parties to the prior suit, but indirectly, by new defendants,

strangers to the earlier action. However, the conceptual basis of such an estoppel is closer to that of pure *res judicata* than pure "collateral estoppel," because the bar is interposed on the theory that the second action is but an attempt to relitigate the *same cause of action*, although the names of the defendants may be different. The distinction between this form of estoppel, *res judicata*, and "pure" collateral estoppel has been frequently emphasized:

> Thus, under the doctrine of *res judicata*, a judgment "on the merits" in a prior suit involving the same parties or their privies bars a second suit based on the same *cause of action*. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of *issues actually* litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit.

Lawlor v. National Screen Service Corp., *supra,* 349 U.S. at 326, 75 S.Ct. at 867 (emphasis supplied). See also Judge Goodrich's opinion in *Lawlor*, before this court, 211 F.2d 934, 935 (3d Cir. 1954).

The above distinction becomes important in this case. The cause of action was terminated in the first proceedings, and, therefore, the principle of *res judicata* would apply in favor of the original defendants and those new defendants encompassed by the *Bruszewski* rule. On

---

4. Where one or both suits have been brought under federal diversity jurisdiction, the collateral estoppel and *res judicata* laws of the forum state(s) may become applicable through Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the full faith and credit clause, or 28 U.S.C. § 1738. See Lynne Carol Fashions, Inc. v. Cranston Print Works Co., 453 F.2d 1177 (3d Cir. 1972); Williams v. Ocean Transport Lines, Inc., 425 F.2d 1183 (3d Cir. 1970). State law is inapplicable, however, where, as here, the consecutive suits are both based upon federal question jurisdiction. Bruszewski v. United States, *supra*, 181 F.2d 419 (3d Cir. 1950).

5. The majority in *Nickerson* recognized that Judge Hastie's view was the general rule, but concluded that it was not applicable to patent cases: "We continue to believe that such change as may be desirable in this exception in patent cases to the general rule of collateral estoppel should be made . . . by the Supreme Court itself. . . ." 419 F.2d at 984. The Supreme Court obliged two years later and eliminated the patent case exception in Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

the other hand, the orthodox doctrine of collateral estoppel described by Chief Justice Warren in *Lawlor* is inapplicable here because the first "judgment was unaccompanied by findings and hence did not bind the parties on any issue." Lawlor v. National Screen Service Corp., *supra,* 349 U.S. at 327, 75 S.Ct. at 868; United States v. International Building Co., 345 U.S. 502, 505, 73 S.Ct. 807, 97 L.Ed. 1182 (1953). Only if the second suit relates to the same cause of action as the first, *Bruszewski,* as distinguished from merely presenting an identity of certain issues, United States v. International Building Co., *supra,* can it be said that "the [first] judgment dismissing the previous suit 'with prejudice' bars a later suit on the same cause of action." Lawlor v. National Screen Corp., *supra,* 349 U.S. at 327, 75 S.Ct. at 868.

■ We previously determined that the essential allegations of the second complaint parallel those of the first. Moreover, what was averred in the original action was a conspiracy participated in by named individuals, and the sole material change in the later suit was the addition of certain defendants, some of whom had been named in the original complaint as participating in the conspiracy but had not been named as parties defendant at that time. We conclude that the relationship of the additional parties to the second complaint was so close to parties to the first that the second complaint was merely a repetition of the first cause of action and, therefore, it is barred by application of the *Bruszewski* doctrine.

■ The court below granted appellee's request for a permanent injunction restraining appellant from instituting proceedings against appellees and their privies based upon the operative facts alleged in the complaint. Injunctive relief was a proper remedy under the circumstances of this case. See Root v. Woolworth, 150 U.S. 401, 14 S.Ct. 136, 37 L.Ed. 1123 (1893).

The judgment of the district court will be affirmed.